In re Hershel L. COWSERT and Catherine A. Cowsert, Debtors.

ELGIN NATIONAL BANK, Plaintiff,

v.

Hershel L. COWSERT, Catherine A. Cowsert and Herbert S. Freehling, Trustee, Defendants.

Bankruptcy No. 81–00056–BKC–JAG. Adv. No. 81–0159–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

Aug. 19, 1981.

Order Denying Motion for Rehearing Oct. 6, 1981.

Allen M. Anderson, South Elgin, Ill., Neil J. Berman, Miami, Fla., Schaffner & Castillo, Elgin, Ill., for plaintiff.

Gerry L. Dondanville, Pompano Beach, Fla., for debtors.

Reggie David Sanger, Fort Lauderdale, Fla., for trustee.

Herbert S. Freehling, Fort Lauderdale, Fla., trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding plaintiff, Elgin *National* Bank seeks a lifting of the automatic stay of 28 U.S.C. § 362(a) so that it may proceed to take possession of certain real property held in an Illinois land trust of which defendant-debtors are the beneficiaries. Elgin National is the land trustee as well as a creditor.

Another complaint to lift stay, Adversary Case No. 81–0089–BKC–JAG–A, was filed by Elgin *State* Bank, the first mortgagee on one of the real properties. That adversary action involved the same facts and was tried by the same counsel shortly prior to this trial. There was no live testimony given at this trial, but in addition to documentary evidence, the depositions of certain persons, taken in Illinois, were admitted. The Findings and Conclusions in that case reflect more fully the complexity of issues.

Debtors Herschel L. Cowsert and his wife Catherine A. Cowsert were formerly residents of Illinois. In 1976 they executed a Trust Agreement, with Elgin National Bank as trustee. (Exhibit No. 1 to the Deposition of William Westerman, Plaintiff's Exhibit No. 1). The first property deeded to the trust was the debtors' former residence, a home at 3869 Hopps Road, Elgin, Illinois (Exhibit No. 1 to Deposition of William Westerman, Plaintiff's Exhibit No. 1). In January of 1980, a condominium unit at 1450 Plymouth Road, Elgin, Illinois, known as Unit 505, Tyler Towers, was added to the land trust. (Plaintiff's Composite Exhibit No. 5).

There is a first mortgage on each of these two properties. Home Federal Savings &

Loan Association holds a mortgage on the Hopps Road property, with a balance on its note, including interest and late charges, of $47,107.67 (Plaintiff's Exhibit No. 2, Deposition of Betty Chartrand, p. 9, and exhibits attached thereto.) The first mortgage on the condominium is held by Elgin State Bank (Exhibit E to Debtors' Schedule A–2) and the balance of that debt, as shown on Schedule A–2, is $43,000. (It is this mortgage which is the subject of Elgin State's complaint to lift stay.)

On January 11, 1980, Elgin National made a loan to the Cowserts, secured by a collateral assignment of the Cowserts' beneficial interest in the land trust (an "ABI"). (Exhibits Nos. 2, 3 and 5 to the Deposition of William Westerman, Plaintiff's Exhibit No. 1). A financing statement was filed in Illinois on January 14, 1981, covering this collateral. (Exhibit No. 4 and the Deposition of William Westerman, Plaintiff's Exhibit No. 1). The balance as of May 22, 1981, on debtors' note to Elgin National is $89,992.62. (Deposition of William Westerman, p. 13, Plaintiff's Exhibit No. 1).

Counsel stipulated that in the latter part of May, 1980, the Cowserts moved to Florida.

In September of 1980, they made a subordinate assignment of the same beneficial interest in the land trust to Elgin *State* Bank (Exhibit F to Debtors' Schedule A–2). No financing statement for this security agreement was ever filed. The balance of that debt, as shown on Schedule A–2, is $18,000.

Debtors listed the value of the condominium as $55,000 on their schedules B–1 and A–2. In his deposition, Jan George Hervert, plaintiff's expert real estate appraiser, referred to the value as $61,000, but gave no supporting data because the deposition primarily related to the Hopps Road property. (Plaintiff's Exhibit No. 3, p. 14). The house was valued by the debtors at $105,000 on their schedules B–1 and A–2, and Hervert appraised it at $96,000. (Plaintiff's Exhibit No. 3, p. 11).

The Cowserts filed their joint petition in bankruptcy under chapter 7 on January 16, 1981.

■ Plaintiff seeks a lifting of the stay pursuant to 11 U.S.C. § 362(d)(2) which provides that relief shall be granted if:

> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

All agree that subsection (B) is satisfied because in a chapter 7 case, there is no reorganization. Plaintiff further contends that subsection (A) is also automatically satisfied in a chapter 7 proceeding because all non-exempt property belongs to the trustee on behalf of the estate and the debtor's ownership is terminated. Plaintiff argues that if the *trustee's* equity were the issue, § 362(d)(2) would have been so phrased by Congress. Plaintiff cites no case applying this interpretation of the statute, but relies on the section's plain wording. The court has considered this imaginative and resourceful argument by the plaintiff, but concludes that it has no merit. Such reasoning would require relief from stay in all chapter 11 cases as well, because in reorganization cases the "debtor-in-possession" is not the same legal entity as the "debtor". Such an interpretation would moot subsection (B), would render the automatic stay provisions of the Bankruptcy Code virtually meaningless, and is not in keeping with what this court discerns to have been the Congressional intent.

At the start of its further consideration of this matter, the court must determine exactly what plaintiff is seeking permission to do, and in what property the debtors' equity is to be calculated. Upon examining the facts it seemed apparent to the court that plaintiff is a secured creditor, plaintiff's collateral is the beneficial interest which the debtors assigned to it, and plaintiff must be seeking to lift the automatic stay so that it can proceed to repossess/foreclose on its collateral—the beneficial interest. Pursuant to a UCC sale, it might then become owner of the beneficial interest and thereby obtain the real property (which is, of course, already subject to the two first mortgages.)

Illinois courts have repeatedly upheld the right of parties to, in effect, transform what traditionally has been an interest in real estate into a personal property interest, through the use of the land trust device.[1] E. g. *Horney v. Hays,* 11 Ill.2d 178, 142 N.E.2d 94 (1957). As personal property, when the beneficial interest in a land trust is given as collateral the transaction is governed by Article 9 of the Uniform Commercial Code, and it has been held to be of that type of collateral classified as a general intangible. Ill.Rev.Stats. ch. 26, § 9–106, *Levine v. Pascal,* 94 Ill.App.2d 43, 236 N.E.2d 425 (1968). When a loan secured by this type of collateral is in default, the secured party (assignee of the beneficial interest) may exercise its rights under the UCC. Generally a non-judicial sale is sufficient, and the purchaser of the beneficial interest, whether it is the secured party or another bidder, may exercise the owner's rights under the land trust agreement, and thus obtain the real property. (Kenoe, at Footnote No. 1).

After memoranda and an additional conference on the issues, it became clear that plaintiff does not consider itself confined to those remedies. Plaintiff takes the position, pursuant to *Matter of Estate of McGaughey,* 60 Ill.App.3d 150, 17 Ill.Dec. 260, 376 N.E.2d 259 (1978) that when the Cowserts assigned their beneficial interest to it—if not earlier—it became absolute owner of the real property which is the *res* of the land trust, because of the merger of its interests as land trustee and as creditor. Whatever the Illinois law in the context of probate class priorities (which was at issue in *McGaughey*) for purposes of this bankruptcy court's determination of litigation to lift the automatic stay, plaintiff cannot be other than a secured creditor. It claims to have obtained absolute ownership of the real property at the time it made its loan to the Cowserts, yet that absolute ownership, if such it was, was obviously subject to

divestment if the loan were repaid. Likewise, it concedes that its ownership was only to the extent of the loan balance—and thus would vary from time to time. (In fact, it is only because of the possibility of an excess of *res* value over the debt to Elgin National which causes plaintiff to feel the automatic stay may apply to it.) These factors demonstrate that, whatever the language used, Elgin National's right to the beneficial interest, and thereafter to the real property, is only as a secured party. The Illinois cases recite that a land trustee holds both legal and equitable title to the real property. But the cases do not permit land trustees generally to claim the type of ownership asserted by plaintiff here. Where an assignment of beneficial interest is made solely for collateral purposes it should not trigger a merger which Illinois law deems not to have occurred up to that point.

Plaintiff's only remedy from this court, then, would be to get the stay lifted so that it might repossess or foreclose on the beneficial interest. The trustee asserts that the stay may not be lifted because plaintiff failed to perfect its security interest and therefore has an interest in the collateral subordinate to the trustee's. This court agrees with the trustee.

Both Florida (the forum state) and Illinois have adopted the UCC choice of law provision at Fla.Stats. § 679.103(3)(b) and Ill.Rev.Stats., ch. 26, § 9–103(3)(b):

> The law (including the conflict of laws rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest.

The Cowserts were residents of Illinois at the time the transaction was completed, but later became residents of Florida, so the Florida law as to perfection applies. As discussed below, Elgin National's security interest was perfected under Illinois law, but it is not perfected under Florida law.

1. For those of us in jurisdictions providing less exposure to the Illinois land trust, two articles providing a useful introduction to the concept and its use in secured financing are:

Kenoe, *Land Trust Financing and the Uniform Commercial Code,* 52 Chi.Bar Rec. 419 (1971) and *Fein and Seils, Loans to Be Secured By an Assignment of the Beneficial Interest in a Land Trust,* 55 Chi.Bar Rec. 165 (1974).

The classification of collateral in Florida is the same as in Illinois. Fla.Stats. § 689.-071(4) provides that the interests of beneficiaries shall be deemed to be personal property where the recorded deed or trust instrument so defined the interests. Here the Cowserts' deed in trust to Elgin National (Plaintiff's Composite Exhibit No. 5) and the Trust Agreement executed in 1976 (Exhibit No. 1 to Deposition of William Westerman, Plaintiff's Exhibit No. 1) so provided. By the terms of Fla.Stats. § 679.106, such an interest would be a general intangible for purposes of UCC Article 9.

■ Prior to the adoption of the 1972 amendments to the UCC the perfection provisions in Florida and in Illinois were also the same. Under UCC 9–302, the filing of a financing statement in the appropriate office is required for perfection of a security interest, with certain enumerated exceptions. Prior to the 1972 amendments, the official uniform text included no exceptions applicable to ABI's, and Illinois and Florida therefore both required the filing of financing statements. The 1972 amendments added an exception at 9–302(1)(c) for "a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate". That amendment was adopted by the Illinois legislature without change, codified at Ill.Rev.Stats., ch. 26, § 9–302(1)(c). It has been held that:

> . . . by the explicit terms of Section 9–302(1)(c), it is not necessary to file such a statement to perfect a security interest in that class of "general intangibles" consisting of all beneficial interests in land trusts.

*First Federal Savings and Loan Association v. Pogue,* 72 Ill.App.3d 54, 27 Ill.Dec. 588, 389 N.E.2d 652, 656 (1979), leave to appeal den. 79 Ill.2d 610 (1979). The law having been amended, Elgin National's security interest was perfected at its inception without filing.

However, Fla.Stats., § 679.103(3)(e), provides:

> A security interest perfected under the law of the jurisdiction of the location of the debtor is perfected until the expiration of 4 months after a change of the debtor's location to another jurisdiction, or until perfection would have ceased by the law of the first jurisdiction, whichever period first expires. Unless perfected in the new jurisdiction before the end of that period it becomes unperfected thereafter and is deemed to have been unperfected as against a person who became a purchaser after the change.

To preserve its perfection, Elgin National was required to perfect in Florida within four months after the Cowserts moved to Florida.

Florida, contrary to Illinois, adopted a modified form of the amendment to 9–302, and excepts only "a security interest created by an assignment of a beneficial interest in a decedent's estate". Fla.Stats. § 679.-302(1)(c). Thus in Florida it continues to be necessary to file a financing statement in order to perfect a security interest in a beneficial interest in a land trust. This plaintiff did not do, and it must be treated as unsecured.

The requirements of 11 U.S.C. § 362(d)(2) have not been satisfied and the stay will not be lifted.

Pursuant to Bankruptcy Rule 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.

### ORDER DENYING MOTION FOR REHEARING

Plaintiff Elgin National Bank filed its motion for rehearing following entry of Final Judgment for the defendants. The motion has not brought to the court's attention any fact or issue newly discovered or overlooked by the court. However, to correct any misapprehension or mischaracterization of the Findings and Conclusions previously entered, or to clarify any implicit findings, the Findings and Conclusions previously entered are summarized as follows:

■ 1. The complaint to lift stay is deemed to have been brought by Elgin National Bank as a secured creditor of defendants, not as land trustee. Under Illinois

law, Elgin National *as land trustee* and as land trustee only holds legal and equitable title to the real estate in question. However, the trust agreement and deeds of trust, pursuant to which the land trustee holds this real estate do not create a right of beneficial use in the land trustee, and do not give rise to any cause of action set forth in this complaint which could be asserted by the land trustee. The roles of secured creditor and land trustee do not merge, although held by the same entity.

2. In making the loan in question to the Cowserts, Elgin National as creditor took an assignment of beneficial interest (an ABI) in the land trust as security. It did not take the underlying real property as its security. While a deed absolute on its face may in fact be taken for collateral purposes (see, e. g., *Schwartzentruber v. Stephens*, 8 Ill.2d 222, 133 N.E.2d 33 (1956)), and in some jurisdictions the term "Deed of Trust" may be used in such transactions, plaintiff did not carry its burden of proving that such was the intention of the parties here. To the contrary, the court has found that the deeds from the Cowserts to Elgin National were *not* given as security for the Cowserts' indebtedness to Elgin National. Evidence leading to this determination includes the following: The first parcel of real property was deeded to Elgin National approximately four years before Elgin National made the loan in question to the Cowserts, *not* in conjunction with the loan. The note given by the Cowserts to Elgin National recites that Elgin National is taking the ABI as collateral for the indebtedness. The parties executed a security agreement and filed a financing statement identifying the ABI as the collateral. No documents or testimony refer to the real property as security. The deeds conveying each parcel recite that they are given pursuant to the trust agreement, and as referred to above, those instruments do not reflect a secured transaction.

3. Because Elgin National's collateral was the ABI, the "property" in which the debtors' equity is to be calculated for purposes of § 362(d)(2) is the beneficial interest in the land trust, *not* the real estate which is held by the trust. However, because Elgin National's security interest was not reperfected in Florida, Elgin National as secured creditor lost its priority to the bankruptcy trustee and the court therefore denied relief from the automatic stay without reaching the question of the value of the beneficial interest. It is, therefore

ORDERED that plaintiff's motion for rehearing be denied.