In re Ernest J. PRESTON, Debtor,

Robert H. WALDSCHMIDT,
Trustee, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Defendant.

Adv. No. 385–0024.
Bankruptcy No. 384–01048.

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 21, 1985.

Robert H. Waldschmidt, Cosner & Waldschmidt, Nashville, Tenn., for trustee.

Rebecca Lyford, Morton, Lewis, King & Krieg, Nashville, Tenn., for FDIC.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the Federal Deposit Insurance Corporation ("FDIC") has a security interest in the debtor's interest in the second of two trusts where the security agreement and financing statement mistakenly identify the first trust and the assets underlying the transaction were transferred to the second trust before the security agreement was executed. For the reasons stated below, we hold that the trustee defeats the FDIC's claim of a security interest in the second trust.

### I.

At some time prior to 1980 [1] Thomas Beasley, Boyd Adams and E.J. Preston (the "debtor") became equal beneficiaries of an express trust in which William D. Castleman served as trustee (the "Castleman Trust"). The corpus of the Castleman Trust was two tracts of land on Lebanon Road, Davidson County, Tennessee. The deeds to these tracts named William Castleman, Trustee as grantee and were filed in Book 4644, page 457 and Book 5384, page 879 of the Register's Office for Davidson County, Tennessee.

In October, 1980, the parties to the Castleman Trust determined that the land should be transferred to a new trust with a new trustee. On October 7, 1980 a four-page trust agreement (the "Todd Trust") was executed by Tommy Todd, Trustee and Thomas Beasley, Boyd Adams, and E.J. Preston, equal beneficiaries. This trust agreement was recorded at the Davidson County Register's Office on October 14, 1980.

The Todd Trust had no corpus when the agreement was executed, but the trust document stated that Tommy Todd, Trustee "is about to take title" to certain real estate. On October 14, 1980, Tommy Todd, Trustee was deeded the two Lebanon Road parcels of land previously held by the Castleman Trust. The grantor of these properties was William D. Castleman, Trustee. The Castleman Trust had no assets after it conveyed the land to the Todd Trust. Deeds showing the conveyance of the land from Castleman, Trustee, to Todd, Trustee, were recorded on October 14, 1980 in the Register's Office for Davidson County,

---

**1.** The date of formation of the Castleman Trust is not disclosed in the record.

Tennessee and appear in Book 5663, Page 866, and in Book 5663, Page 864.

On August 11, 1981, E.J. Preston and the City & County Bank of Knox County, Tennessee ("C & C Bank") concluded a loan agreement. As part of the collateral provided to the bank, Preston executed an "Assignment of Beneficial Interest in a Trust" which recited as follows:

> In consideration of the City & County Bank of Knox County, Knoxville, Tennessee, agreeing to extend credit to Preston Enterprises, Inc., in the aggregate amount of One Million, Five Hundred Fifty Thousand Dollars ($1,550,000), E.J. Preston hereby hypothecates, assigns, transfers and sets over to the City & County Bank of Knox County, all monies or anything of value which may be paid or may be due and payable to E.J. Preston as beneficiary of a Trust with William D. Castleman, Trustee, which Trust is the owner of two tracts of real property in Davidson County, Tennessee, of record in Book 4644, page 457 and Book 5348,[2] page 879, Register's Office for Davidson County.
>
> This assignment shall constitute a security interest in the undersigned's rights in such trust, and in the event of default, the Bank shall have all rights afforded it in the Uniform Commercial Code in Tennessee or elsewhere.

In connection with this transaction, C & C Bank filed a U.C.C.–1 financing statement with the Tennessee Secretary of State which listed as collateral "All of Debtor's Interest as Beneficiary of a Trust with William D. Castleman, Trustee, which trust is owner of two tracts of real property in Davidson County, Tennessee, of record in Book 4644, page 457 and Book 5384, page 879, Register's Office of Davidson County, Tennessee."

An involuntary Chapter 7 petition was filed against E.J. Preston on April 13, 1984. The plaintiff was appointed trustee by order dated May 1, 1984. The FDIC as liquidator of the now-failed C & C Bank filed a secured claim for $1,814,004.02 plus interest. The trustee attacks the FDIC's claim of a security interest in the debtor's interest in the Todd Trust.

## II.

The trustee argues that the FDIC has no claim to Preston's interest in the Todd Trust since the bank's 1981 security agreement and financing statement fail to identify the Todd Trust and purport instead to assign Preston's beneficial interest in the ("empty") Castleman Trust.

The FDIC argues that the debtor intended to grant C & C Bank a security interest in his beneficial interest in a trust which held the Lebanon Road properties. The FDIC urges that its security agreement and financing statement, although containing minor errors, adequately describe its security interest and are not "seriously misleading."

We must first determine whether the security transactions described above are governed by real property registration law or by the provisions of the Tennessee Uniform Commercial Code (TENN.CODE ANN. § 47–1–101 et seq. (1984)).

Article Nine of the U.C.C. does not apply to "the creation or transfer of an interest in or a lien on real estate." TENN.CODE ANN. § 47–9–104(j) (1984). The characterization under state law of the interest secured is controlling for purposes of determining the application of 9–104(j). See 1 P. Coogan & J. McDonnell, Secured Transactions Under the Uniform Commercial Code, 1 BENDER'S U.C.C.SERV., § 5A.17(2) (Matthew Bender 1985). We have found no Tennessee statute or court decision determining whether a beneficial interest in a trust of real property is real estate or personalty. One suggested rule is found at Restatement, Second Trusts § 130 ("Restatement"):[3]

---

**2.** The reference to Book 5348 is mistaken in that the tract was actually of record at Book 5384.

**3.** The Restatement of Trusts has been favorably cited by the Tennessee courts. See American Bank & Trust Co. v. Lebanon Bank & Trust Co.,

Except as stated in § 131,

(a) if the trust property is personal property, the interest of the beneficiary is personal property;

(b) if the trust property is real property, the interest of the beneficiary is real property....

*See* 2 A. Scott, The Law of Trusts § 130.1 (3d ed. 1967). Applying this rule, since the Todd Trust contained only real property, Preston's interest would be considered real property.

■ However, there are exceptions to the general rule. Under the doctrine of "equitable conversion", if the trustee has a duty to sell the property and hold the proceeds for the beneficiaries the interests of the beneficiaries are considered real property. *See* Restatement, § 131; 2 Scott, *supra,* at § 131; *Ephraim v. Metropolitan Trust Co.,* 28 Cal.2d 824, 172 P.2d 501 (1946). Our reading of the Todd Trust agreement shows that although the trustee had authority to sell the land, he had no duty to sell and in fact the agreement contemplates that the property would be rented. On these facts, equitable conversion does not apply. Restatement, § 131, comment c.

Another exception to the general rule is found in those states recognizing what is commonly identified in the literature of trusts as the "Illinois Land Trust." The characteristics of this trust are summarized in *Wambach v. Randall,* 484 F.2d 572, 575, n. 1 (7th Cir.1973) (quoting *Levine v. Pascal,* 94 Ill.App.2d 43, 50, 236 N.E.2d 425, 428 (1968)):

> The Illinois land trust, by its very nature, is characteristically different from common law land trusts. While the common law accomplishes a split between the legal title in the trustee and the equitable title in the beneficiary, in an Illinois land trust, the trustee has both legal and equitable title ... By placing with the trustee the 'full, complete and exclusive title to the real estate, both legal and equitable,' the beneficiary in an Illinois land

trust is left with a personal property interest only ... Numerous ... cases stand for the proposition that the interest of the beneficiary of an Illinois land trust is personal property.

■ When a beneficial interest in such a trust is used as security, the transaction is governed by the provisions of the U.C.C. *See Wambach v. Randall,* 484 F.2d at 572; *American National Bank & Trust Co. v. Ryan,* 106 Ill.App.3d 434, 62 Ill.Dec. 455, 436 N.E.2d 37, 39, 33 U.C.C.REP.SERV. (CALLAGHAN) 1759 (Ill.App.Ct.1982); *In re Cowsert,* 14 B.R. 340 (Bankr.S.D.Fla. 1981). Other states have recognized special land trusts that create beneficial interests which are personal property. *See Riverdale Bank v. Dubois (In re Bugos),* 34 Bankr. 382 (N.D.Ind.1983) ("Indiana Land Trust"). Florida has a statute which specifically provides that where a land trust agreement "contains a provision defining and declaring the interests of beneficiaries thereunder to be personal property only, such provision shall be controlling for all purposes...." FLA.STAT.ANN. § 689.-071(4) (West 1985). In *Taylor v. Richmond's New Approach Ass'n, Inc.,* 351 So.2d 1094, 1096 (Fla.Dist.Ct.App.1977), the court noted the difference between a traditional trust and the "Illinois Land Trust" authorized by Florida law:

> In addition to the distinctive purpose for which an Illinois land trust is normally established, there are some conceptual differences between this kind of trust and the typical testamentary or inter vivos trust. In the case of an ordinary trust, if the trust property is real property the interest of the beneficiaries is usually considered to be real property. Restatement (Second) of Trusts § 130 (1959). Under Section 689.071, the interest of the beneficiaries in an Illinois land trust is considered personal property if so specified.

Tennessee has no statute similar to the Florida statute. We are aware of no Tennessee court decision recognizing the so-called Illinois Land Trust.

28 Tenn.App. 618, 192 S.W.2d 245 (1945) *cert. denied,* (1946).

In the absence of controlling state law or court decisions, and no party having advanced a compelling contrary policy argument, this court believes that the stated intentions of the parties to the Todd Trust agreement should control the nature of the interests created by the agreement. The settlors of the Todd Trust intended the beneficiaries' interests to be personal property. The Todd Trust at ¶ 2 declares that each beneficiary's rights in the property "shall be deemed to be personal property, and may be assigned and transferred as such" and that "no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only in (sic) interest in the earnings and proceeds aforesaid." We believe that the parties' intentions should govern. A leading treatise on trusts supports this approach. *See* G. Bogert, The Law of Trusts and Trustees § 185 (revised 2d ed. 1979). *See also Wright v. Security First National Bank of Los Angeles*, 35 Cal.App.2d 264, 95 P.2d 194 (1939) *appeal dismissed*, 311 U.S. 611, 61 S.Ct. 32, 85 L.Ed. 387 (1940). We hold that Preston's beneficial interest in the Todd Trust was personal property and the assignment to C & C Bank was subject to the provisions of the Tennessee Uniform Commercial Code.[4]

A written security agreement is enforceable when it is signed by the debtor and contains a description of the collateral. TENN.CODE ANN. § 47–9–203(1)(b) (1984). The description of collateral need not be exact, but must "reasonably identify what is described." TENN.CODE ANN. § 47–9–110 (1984). "The test of sufficiency of a description ... is that the description do the job assigned to it—that it make possible the identification of the thing described." Comments to Official Text TENN.CODE ANN. § 47–9–110 (1984); *see Cookeville Production Credit Ass'n. v. Frazier*, 16 B.R. 674 (Bankr.M.D.Tenn. 1981). To defeat the trustee in bankruptcy's claims, the secured party must also demonstrate perfection of its security interest by central filing.[5]

The security agreement describes a "trust with William A. Castleman, Trustee, which Trustee is the owner of two tracts of real property...." At the time the security interest was given, the Castleman Trust existed as a legal entity though it had almost a year earlier deeded the tracts in question to the Todd Trust. The security agreement does not identify and makes no reference to the Todd Trust.

An interested party searching the records of the Secretary of State would be easily misled by the bank's filing. The Castleman Trust reference in the bank's U.C.C.–1 would be the benchmark upon which a records-searcher would be entitled to rely. The Todd Trust, as demonstrated above, is a wholly separate legal entity. The reference to the "two tracts of real property" in the U.C.C.–1 would have been further misleading, not enlightening. Anyone who chose to follow the chain of reference to the Register's Office for Davidson County would have quickly determined that the land was no longer held by the Castle-

---

4. This conclusion is buttressed in part by the fact that one of the parcels of real estate in the Todd Trust was sold and converted to cash prebankruptcy.

5. TENN.CODE ANN. § 47–9–302 states that a financing statement *must* be filed to perfect all security interests except for listed exceptions. Under the 1972 Amendments to the U.C.C., there is no filing requirement for "a security interest created by an assignment of a beneficial interest in a trust." U.C.C. § 9–302(1)(c). This exception was not adopted in Tennessee until recent amendments to the Tennessee Code effective January 1, 1986. *See* TENN.CODE ANN.1985 Advance Legislative Service, No. 5, Pub.Ch. No. 404, Sen.Bill 714 (Michie). Thus, the filing of a financing statement with the Secretary of State under TENN.CODE ANN. § 47–9–401(1)(c) was the proper way to perfect a security interest in a beneficial interest in a trust when these transactions took place. *See In re Cowsert*, 14 B.R. 340 (Bankr.S.D.Fla.1981). We do not interpret this filing requirement exception to mean that the Code draftsmen intended all beneficial interest in trusts to be subject to Article Nine. As discussed in the text, if state law classifies an interest as a real estate interest Article Nine does not apply.

man Trust. Entitled to rely on these records, the searcher would rightfully conclude that the Todd Trust and the land were *not* encumbered by the bank's security interest.

The debtor's interest in the Castleman Trust may be adequately described (but see fn. 2) to give the FDIC a security interest in Preston's interest in that Trust. However, his interest in the Todd Trust is not described at all. The parties' intentions may be relevant between themselves, but the purpose of financing statements is to give notice to third parties. A lender considering accepting Preston's interest in the Todd Trust as collateral would have no notice that this interest had already been pledged. *See Material Service Corp. v. Bogdajewicz,* 69 Ill.App.3d 742, 26 Ill.Dec. 227, 387 N.E.2d 1057, 26 U.C.C.REP.SERV. (CALLAGHAN) 185 (Ill.App.1979) (security agreement which described collateral as "the beneficial interest in certain land trusts held by the Sears Bank" did not adequately identify collateral).

The bank was careless in drafting and accepting the security agreement and filing its financing statement. From the inception of the security transaction, the bank obviously conceived of its interest in the Castleman Trust as a personal property interest. It is charged with knowledge that perfection of an interest in Preston's interest in the Castleman Trust did not insure the contents of that trust. It clearly knew of the descriptions of the tracts of land it thought were in the Castleman Trust, but a cursory review of the register's office records would have revealed that this land was not an asset of the trust it was receiving as collateral. Besides naming the "wrong" trust in the security agreement and financing statement, it listed the wrong book number for one of the properties. (*See* fn. 2). This court has no authority to reform the bank's documents. The Trustee in bankruptcy has the superior interest in the proceeds of the Todd Trust.

An appropriate order will be entered.