COMMERCIAL NATIONAL BANK OF CHICAGO, Plaintiff-Appellee, v. HAZEL MANOR CONDOMINIUMS, INC., *et al.*, Defendants-Appellants.

First District (1st Division) No. 85—0743

Opinion filed December 30, 1985.

Anthony Haswell, of Chicago, for appellants.

Peterson, Ross, Schloerb & Seidel, of Chicago (Lawrence X. Pusateri and Rocco J. Spagna, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Hazel Manor Condominiums, Inc., Thomas Joyce and Nancy Lee Joyce, bring this interlocutory appeal from the trial court's order denying their petition to enjoin plaintiff, Commercial National Bank of Chicago (CNB), from conducting a sale of certain collateral pursuant to the Uniform Commercial Code (UCC). Ill. Rev. Stat. 1983, ch. 26, par. 1—101 *et seq.*

The following facts, evident from the record, are not in dispute: In October 1980, Thomas and Nancy Lee Joyce and Arnold and Wilma Anderson entered into a joint venture agreement for the purchase of an apartment building commonly known as 4278 North Hazel Street (property) in the city of Chicago. Hazel Manor Condominiums, Inc., is an Illinois corporation. Thomas and Nancy Lee Joyce own and control one-half of the corporation's issued stock, while Arnold and Wilma Anderson own and control the other half. On May 26, 1982, title to the subject property was conveyed to plaintiff, a national banking association, as trustee under a trust agreement known as trust No. 562. Hazel Manor Condominiums, Inc., holds 100% of the beneficial interest in said land trust while the power of direction is held by Nancy Lee Joyce and Arnold Anderson.

Commencing in May 1982, Commercial National Bank of Chicago in its individual capacity agreed to make various loans to CNB as trustee for trust No. 562. Among these were a loan in the amount of $60,000 made on August 10, 1982, and a loan in the amount of $1,400,000 made on March 29, 1983, both of which were evidenced by trustee demand notes and secured by trust deeds and trustee's collateral assignments of the beneficial interest in CNB trust No. 562. These notes were also secured by assignments of the beneficial interests in other land trusts. In addition, CNB holds other notes and security relating to the subject property.

CNB claims that at the time the various notes made by defendants became in default, it voluntarily agreed not to foreclose on the properties or to pursue its cumulative remedies under the UCC, based upon representations by defendants that the properties would be sold and the debts satisfied. No sale was consummated, however, and on October 17, 1984, CNB filed a complaint in the circuit court to foreclose its mortgages and other security interests. Subsequently, before any evidence was heard in the foreclosure action, CNB published a notice of public sale of the beneficial interest in trust No. 562. Defendants filed a petition in the trial court to enjoin such sale, which was denied after a lengthy hearing.

At the time of entry of the trial court's order, CNB agreed to

postpone the scheduled sale for several weeks, during which period defendants presented original motions in this court and in the Illinois Supreme Court to enjoin the rescheduled sale. Defendants' motions, which were based upon the same arguments presented in the trial court, were denied, and plaintiff sold the subject collateral on March 29, 1985.

On appeal, defendants seek reversal of the trial court's order and the entry of an order by this court voiding the UCC sale, based on their contentions that the trial court failed to recognize the equitable mortgage nature of the collateral assignment, thereby denying defendants their rights under the Illinois mortgage foreclosure act (Ill. Rev. Stat. 1983, ch. 110, par. 15—101), and that plaintiff's prior election to institute foreclosure proceedings precludes them from denying the existence of an equitable mortgage. Finally, defendants claim that the existence of other real estate mortgages on the subject property entitle them to a judicial foreclosure of the real estate, regardless of whether their subsequent assignment of the beneficial interest to plaintiff is personal property, the sale of which is governed by the UCC. We disagree, and affirm.

A lien upon the beneficial interest in a land trust is not a lien upon the real estate itself, and the assignment of such a beneficial interest to secure a note does not generally convert it into a real estate mortgage so as to permit the right of redemption. (*Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 285-86, 462 N.E.2d 741, *appeal denied* (1984), 101 Ill. 2d 567; *American National Bank & Trust Co. v. Ryan* (1982), 106 Ill. App. 3d 434, 436 N.E.2d 37.) Defendants argue, however, that the collateral assignment of beneficial interest in the case at bar was used merely as a device to circumvent the foreclosure act, which will not be tolerated (citing *De Viogne v. Chicago Title & Trust Co.* (1922), 304 Ill. 177, 136 N.E. 498).

In *De Voigne,* the owners of a lot created a land trust and conveyed the beneficial interest to secure financing for the construction of a house. The trust agreement there provided that if the balance due was paid within 60 days after completion of the work, the trustee would reconvey the legal and equitable titles to the owners, and also stated that if payment was not made, the trustee was to sell the land, as opposed to the beneficial interest, at a public auction. The supreme court found that the trust instruments in that case were intended by the parties to serve as a mortgage on the property, and that an equitable mortgage had in fact been created.

Subsequently, in *Horney v. Hayes* (1957), 11 Ill. 2d 178, 142

N.E.2d 94, the court considered the same issue but found, contrary to *De Voigne,* that the security interest before it was in the nature of a personal property interest. In determining the intent of the parties, the court in *Horney* considered the fact that the subject land trust had not been created merely as security for a debt, that the assignment of the beneficial interest occurred subsequent to the creation of the trust, and that only the beneficial interest in the trust had been pledged as security. The final factor in the court's assessment, and the factor upon which it distinguished its earlier holding in *De Voigne* was that the trust agreement in *Horney* did not provide for the sale of the real estate upon default.

Subsequent cases have generally followed the court's holding in *Horney,* to find that security interests in the beneficial interests in land trusts are personal property interests rather than equitable mortgages. (See *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 287, 462 N.E.2d 741, and cases cited therein; contra, *Landino v. American National Bank* (1983), 120 Ill. App. 3d 740, 458 N.E.2d 1070.) Most recently, the court in *Melrose,* after a thorough analysis of the applicable law, stated its belief that all four of the considerations set forth in *Horney* were not meant to be hard and fast "tests," but merely guidelines which may be used to garner the intent of the parties from the trust instruments. (*Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 288, 462 N.E.2d 741; accord, *Capital Bank & Trust v. Fascetta* (7th Cir. 1985), 771 F.2d 1077.) In *Melrose,* the pledge of the beneficial interest and the creation of the trust occurred on the same day, and the parties admitted that the trust was in fact created as security for a debt. Nevertheless, the court found that a personal property interest had been created, based upon the fact that the instruments in question did not provide that the trust real estate would be sold if the beneficiaries were in default, and because the security transaction concerned the beneficial interest only, and made no reference to the real estate *res* of the trust.

In the instant case, the record contains conflicting testimony as to whether trust No. 562 was originally created for the sole purpose of securing loans which were subsequently made by plaintiff to defendants. The two demand notes at issue, however, were made over two months and 10 months, respectively, after the creation of the subject land trust. Further, the payment of these notes was secured by the assignments of the beneficial interests in other land trusts as well, a fact which we believe supports plaintiff's contention that these particular transactions were distinct from the creation of trust No. 562,

and, which indicates an intent on the part of defendants to thereby pledge security interests in personal property, as opposed to mortgages, in those assignments.

The factor most critical to our determination, however, is the language contained in the collateral assignment of beneficial interest, which states specifically that upon default the secured lender may pursue its remedies and shall have all the rights of a secured party under the UCC, and in the trust agreement itself, which clearly does not provide for the sale of the real estate upon default. Under these circumstances, we find that the trial court correctly concluded that the security arrangements at issue were in the nature of personal property interests. See *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 462 N.E.2d 741; *First Federal Savings & Loan Association v. Pogue* (1979), 72 Ill. App. 3d 54, 389 N.E.2d 652, *appeal denied* (1979), 79 Ill. 2d 610.

Defendants next claim that plaintiff waived its right to relief under the UCC by "admitting" that the subject assignment of beneficial interest was a real estate mortgage. In counts V and VI of its complaint, however, plaintiff clearly seeks the foreclosure of its security interest in the assignment of the beneficial interest in trust No. 562, and not the sale of real estate. In addressing a similar issue, the court in *Melrose* concluded that even the plaintiff's specific allegations that it had an equitable mortgage did not constitute binding admissions, but were merely legal conclusions which conflicted with allegations of fact contained in its supporting exhibits. *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 289, 462 N.E.2d 741, citing *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325.

We are similarly unpersuaded by defendants' final argument, that the co-existence of real estate mortgages on the subject property entitle them to judicial foreclosure proceedings, regardless of the nature of the security interests at issue. Citing *Evergreen Savings v. Barnard* (1978), 65 Ill. App. 3d 492, 382 N.E.2d 467, defendants submit that, as beneficiaries of trust No. 562, they are also "mortgagors" for the purposes of asserting their right to judicial foreclosure, and that their subsequent assignment of beneficial interest as additional security did not in any way deprive them of that right. The factual situation presented in *Evergreen* does not support defendants' contentions, however. In that case, defendant transferred certain property into a land trust, retaining the entire beneficial interest and directing the trustee to execute a note to Evergreen, secured by a real estate mortgage. Defendant subsequently assigned 40%, then later the re-

maining 60% of his beneficial interest in the trust in order to secure certain obligations. Upon defendant's default, the owner of 60% of the beneficial interest sold it at a UCC sale, and the interest was acquired by Evergreen, despite defendant's right to a judicial foreclosure due to the existence of Evergreen's first mortgage on the subject property. The issue then considered by the court was whether the holder of the remaining 40% of the beneficial interest had standing to cure the default in a subsequent mortgage foreclosure action by Evergreen, a question not presented in the instant case. Defendants have therefore cited no authority to support their requested relief, the result of which would be to effectively deprive plaintiff, the owner of a security interest in personal property, of his established rights under the UCC.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and QUINLAN, J., concur.